UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIENGKHAM SINGANONH, | Case No. 1:18-cv-00590-AWI-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUGDMENT BE GRANTED AND THAT DEFENDANTS' REQUEST FOR JUDICIAL NOTICE BE DENIED AS MOOT |
| v. | |
| RODRIGUEZ, et al., | |
| Defendants. | (ECF No. 59) |
| | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

## I.    INTRODUCTION

Tiengkham Singanonh ("Plaintiff") is a former prisoner[1] proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.

This case proceeds "on Plaintiff's original complaint (ECF No. 1), on Plaintiff's claims against Defendants Corporal Rodriguez, Corporal Pre[e[2]], Correctional Officer Sanchez, and Correctional Officer Esquivel for excessive force and failure to provide medical care."  (ECF No. 19, p. 3) (footnote omitted).[3]

On January 20, 2021, Defendants filed a motion for summary judgment on all claims, which includes a request for judicial notice.  (ECF No. 59).  On April 5, 2021, Plaintiff filed his

---

[1] Plaintiff has alleged that he was a pretrial detainee at the time of the underlying incident.  (ECF No. 14, p. 7).

[2] Based on representations made by Defendants, the spelling of this defendant's last name is "Pree."  (See, e.g., ECF No. 32, p. 1)

[3] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

opposition.  (ECF No. 66).  On April 8, 2021, Defendants filed their reply.  (ECF No. 68).[4]

For the reasons that follow, the Court will recommend that Defendants' motion for summary judgment be granted and that their request for judicial notice be denied as moot.

## II.  BACKGROUND

### a.  Summary of Complaint

Plaintiff generally alleges that on November 11, 2016, he attempted to take a shower to ready himself for court.  The water was turned off so that he could not shower.  He had an argument with correctional officers about the rules for getting ready for court and showering.  He alleges that he followed those rules, as well as all orders given by staff.  However, Corporal Rodriguez, Corporal Pree, Correctional Officer Sanchez, and Correctional Officer Esquivel slammed him to the ground and assaulted him.  Plaintiff was then taken to the gym where he was left handcuffed without medical attention.  He was ignored for close to an hour.

### b.  Screening Order

The Court screened Plaintiff's complaint.  (ECF Nos. 17 & 19).  The Court ordered that this action proceed "on Plaintiff's original complaint (ECF No. 1), on Plaintiff's claims against Defendants Corporal Rodriguez, Corporal Pre[e], Correctional Officer Sanchez, and Correctional Officer Esquivel for excessive force and failure to provide medical care."  (ECF No. 19, p. 3) (footnote omitted).  All other claims and defendants were dismissed.  (Id.).

## III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants filed a motion for summary judgment on January 20, 2021.  (ECF No. 59).  According to Defendants, defendant Esquivel, the tower control officer, observed Plaintiff walk into a shower stall.  (ECF No. 59-3, p. 12).  Defendant Esquivel "immediately informed Plaintiff that he could not use the shower and instructed him he needed to return to rack (bunk), because floor officers were completing the morning inmate count and all inmates are to be at their bunks."  (Id.) (citation omitted).

---

[4] In their reply, Defendants argue that Plaintiff did not timely file his opposition and the Court should therefore disregard it.  (ECF No. 68, pgs. 1-2).  It does appear that Plaintiff's opposition was not timely, even though the Court granted Plaintiff two extensions of time (ECF Nos. 62 & 64).  Nevertheless, as Plaintiff is *pro se* and responding to a dispositive motion, the Court will exercise its discretion to consider Plaintiff's opposition.

Plaintiff failed to comply with defendant Esquivel's orders. (Id. at 12-13). Plaintiff was visibly upset, and he cursed at defendant Esquivel. (Id.).

Defendant Esquivel then called for assistance. (Id. at 13). "Immediately, as [defendant Esquivel] was able to observe from [his] position in the tower, Lead Officer and Defendant, Joe Rodriguez, along with non-party, Officer[] F. Delarosa, and Defendants N. Sanchez and B. Pree, entered dorm 'D'." (Id.) (citation omitted).

"As Officers moved toward Plaintiff on the top tier, with Officer Pree and [defendant Rodriguez] in front, and Officers Delarosa and Sanchez trailing slightly behind, Plaintiff immediately began yelling and cussing stating that he had the 'right to take a shower' because he was going to be attending court. Plaintiff continued to be loud, being argumentative [sic], cursing." (Id. at 16) (citation omitted).

"As Officers approached Plaintiff, he began walking away from them, stopping a few times to turn toward them to yell profanities and make other complaints about them not following jail rules. During this time, as he talked, Plaintiff was animated, or moving his hands and arms." (Id. at 17) (citation omitted).

"As Plaintiff moved closer to the bunk area, [defendant Rodriguez] determined that they needed to secure Plaintiff and remove him from the inmate housing area immediately, and that waiting any longer posed an unreasonable risk." (Id.) (citation omitted).

"[Defendant Rodriguez] verbally instructed Plaintiff at that time to stop and place his hands behind his back, and advised him that Officers were going to escort him out of the Dorm. By this time, [defendant Rodriguez] was standing just behind Plaintiff, but Plaintiff did not stop yelling loudly at the Officers and cursing, and [defendant Rodriguez] saw that his fists were cl[e]nched tightly, and he appeared ready to strike one of them." (Id. at 18) (citations omitted). "At that same time, [defendant Rodriguez] heard Officer Pree, who was standing just off to the side of Plaintiff, tell Plaintiff to unclench his fists." (Id. at 19) (citation omitted). "At that moment as Plaintiff's verbal hostility escalated, [defendant Rodriguez] grabbed Plaintiff's left arm using both of his hands to place him in a rear wrist lock and to prevent him striking out, and to attempt to position him to place hand cuffs on him." (Id.) (citation omitted).

"Then, as [defendant Rodriguez] attempted to hand-cuff Plaintiff, Plaintiff began to turn or spin his body, instantly causing a change in the level of force needed and causing officer Pree to grab his other arm with both his hands and to bring Plaintiff in close to him." (Id.) (citation omitted).

"Both Officer Pree and [defendant Rodriguez] then used their body weight to force Plaintiff essentially straight down to the ground. While on the ground, Plaintiff continued yelling loudly and thrashing about, as [defendant Rodriguez] and Officer Pree were attempting to place hand restraints on his wrists. At this time, [defendant Rodriguez] was still trying to secure Plaintiff's arms and was somewhat straddling Plaintiff['s] hips off to one side, but he and Officer Pree were still unable to gain control of both of Plaintiff's hands in order to place restraints on them." (Id. at 20) (citations omitted).

"At this time, [defendant Rodriguez] deployed a single strike with his fist to the upper left side (rib area) of Plaintiff's torso, as a distraction." (Id.) (citation omitted). "At that same time, Officer Nidia Sanchez assisted by kneeling and restraining Plaintiff's feet and ankles with her hands, in order to help secure Plaintiff, stop his kicking, and prevent injury to him or [the officers]. These measures were successful in distracting Plaintiff long enough expose his hands and for [defendant Rodriguez] to [] secure the cuff restraints on his wrists." (Id. at 20-21) (citations omitted).

"Once secured in restraints, Officer Pree and [defendant Rodriguez] immediately assisted Plaintiff to a standing position and proceeded to escort him out of the dorm and into a nearby gym area without further incident…." (Id. at 21) (citations omitted).

"Upon assisting Plaintiff to his feet, [defendant Pree] saw no visible injuries, cuts, or bleeding, and saw that Plaintiff was easily walking, and continuing to yell and curse at them about his shower…. Only shortly after delivering Plaintiff to the gym did he voice a complaint of left shoulder pain." (Id. at 22) (citations omitted).

"Due to Plaintiff's complaint of pain and his ongoing agitated state, after placing Plaintiff in the gym, and as the lead officer at that time, [defendant Rodriguez] took the responsibility to proceed directly to locate the Corizon Nurse and mental health services and

4

advise of the incident and Plaintiff's condition and whereabouts, so they could evaluate Plaintiff, which [defendant Rodriguez] did." (Id.) (citation omitted).

Defendants argue that defendant Esquival is entitled to summary judgment on Plaintiff's excessive force claim because he never used any force at all. Defendants also argue that all defendants are entitled to summary judgment on the excessive force claim because the force used was objectively reasonable and because they are entitled to qualified immunity.

Defendants argue that defendant Esquival is entitled to summary judgment on Plaintiff's claim for failure to provide medical care because he took no part in the incident. Defendants also argue that all defendants are entitled to summary judgment on Plaintiff's claim for failure to provide medical care because they did not deny Plaintiff adequate medical care and because they acted in a manner that was objectively reasonable. Defendants also argue that they are entitled to qualified immunity on this claim.

In support of their motion, Defendants submit, among other things, the declarations of defendants Rodriguez, Pree, Sanchez, and Esquivel, the declarations of Officer Fili Allams Delarosa and Sergeant Stephanie Gibbs, pictures of Plaintiff that are attached to the incident report, and excerpts of Fresno County Jail policies.

## IV.    PLAINTIFF'S OPPOSITION

Plaintiff argues that all defendants chose to make up their own rules.

"On November 10, 2016 all defendants committed a 'violation', as the FRESNO COUNTY JAIL INMATE RULE BOOK 'clearly' states that inmates housed in dormitory of multi-occupancy cell living may shower anytime they have access to the day-room." (ECF No. 66, p. 2). Because inmates (including Plaintiff) were cleaning, the dayroom and the showers were accessible. (Id.).

Plaintiff had already been given the order to get ready for court at about 5:30 a.m. or 6:30 a.m. (Id. at 2-3). An announcement was made, "the exact words were, 'court calls whos [sic] name was called be ready by 8:00 am." (Id. at 3). Getting ready for court consists of taking a quick shower, brushing your teeth, using the restroom, and looking presentable. (Id.).

However, the inmate handbook states that inmates should shower during breakfast time,

because breakfast is normally served during the hours of 2:00 to 3:00 in the morning.  (<u>Id.</u>).  Inmates usually take a five-minute (courtesy) shower during the 5:30 a.m. court calls because the service of breakfast hours are way too early and inmates go back to sleep after receiving their breakfast bags.  (<u>Id.</u>).

Plaintiff argues that Defendants are not entitled to summary judgment because they violated his due process rights.  (<u>Id.</u>).  The surveillance camera was supposedly not functioning on the day in question.  (<u>Id.</u>).  Additionally, as trained officers, they should have carefully interviewed inmates who witnessed the incident.  (<u>Id.</u> at 4).

Plaintiff also argues that there were two Eighth Amendment violations.  (<u>Id.</u>).  Unreasonable force was applied based on Defendants' misjudgment of body language.  (<u>Id.</u> at 5).  Plaintiff complied with all orders.  (<u>Id.</u>).  Plaintiff was wearing only boxers, was damp from getting out of the shower, and asked if he could finish washing off.  (<u>Id.</u>).  All defendants said "no."  (<u>Id.</u>).  Plaintiff was told to get dressed.  (<u>Id.</u>).  After asking for a higher authority, Plaintiff then replied to Defendants with a "F--- Y--."  (<u>Id.</u>) (alterations in original).  Plaintiff then was held by two officers, who both held each of his arms.  (<u>Id.</u>).  He was then slammed on his injured shoulder, injuring him.  (<u>Id.</u>).  Plaintiff was moving, but he was trying to get off his injured shoulder.  (<u>Id.</u>).

A second assault then took place, where Plaintiff was punched for being injured and screaming in pain.  (<u>Id.</u>).  "Plaintiff was struck continuously by the officer as the officer's [sic] admitted from the statement."  (<u>Id.</u>).  "The Defendants [sic] statements was [sic] that the numerous punch[es] was [sic] to control [Plaintiff], when [he] was flopping around in pain, yelling."  (<u>Id.</u> at 6).

Plaintiff does not address Defendants' argument that they are entitled to summary judgment on his Fourteenth Amendment claim for failure to provide medical care.  Plaintiff also does not address Defendants' argument that they are entitled to qualified immunity.

Plaintiff's opposition is signed under penalty of perjury.  Plaintiff also submits a copy

\\\

\\\

of the Rules Violation Form and attached pictures, as well as x-ray results.[5]

**V. DISCUSSION**

    a. <u>Legal Standards for Summary Judgment</u>

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Albino v. Baca</u> ("<u>Albino II</u>"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex</u>, 477 U.S. at 322. Additionally, "[a] summary judgment motion

---

[5] Plaintiff submits other evidence as well, including a Reasonable Accommodation Panel Response dated September 5, 2018, and copies of certain documents he filed in this case. Plaintiff does not explain, and it is not clear, why these documents were submitted.

7

cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255.

b. Failure to Properly Oppose Motion

i. *Legal Standards*

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

Under this Court's local rules, "[e]ach motion for summary judgment or summary adjudication shall be accompanied by a 'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish that fact." Local Rule 260(a). "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial…. The opposing party shall be responsible for the filing of all evidentiary

documents cited in the opposing papers." Local Rule 260(b) (citation omitted).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### ii. *Analysis*

Plaintiff was provided with a <u>Rand</u> warning, which provided a summary of the summary judgment requirements. (ECF No. 59-1, p. 2). The warning also informed Plaintiff about Local Rule 260, and about how Local Rule 260 required Plaintiff to "'reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.'" (<u>Id.</u> at 2-3) (quoting Local Rule 260(b)). Additionally, Plaintiff was given two extensions of time so that he could oppose Defendants' motion. (ECF Nos. 62 & 64).

Despite this, Plaintiff failed to reproduce Defendants' itemized statement of facts and did not otherwise dispute any of the facts by citing to evidence in the record. While Plaintiff is proceeding *pro se*, it is worth noting that he was released from prison over six months before the motion for summary judgment was filed. (<u>See</u> ECF No. 52). And, "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules." <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (citing <u>Bias v. Moynihan</u>, 508 F.3d 1212 (9th Cir. 2007)). Accordingly, the Court may consider all facts that Plaintiff failed to properly address as undisputed for purposes of the motion for summary judgment.

### c. <u>Plaintiff's Fourteenth Amendment Excessive Force Claim</u>

### i. *Legal Standards*

"The Eighth Amendment's prohibition of cruel and unusual punishments applies only after conviction and sentence. Pretrial detainees are not convicted prisoners. Therefore, pretrial detainees are accorded no rights under the Eighth Amendment. Instead, their rights arise under the Due Process Clause of the Fourteenth Amendment." <u>Lee v. City of Los</u>

Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citations and internal quotation marks omitted).

"[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015).

"A court (judge or jury) cannot apply this standard mechanically. Rather, objective reasonableness turns on the facts and circumstances of each particular case. A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. at 397 (alterations in original) (citations and internal quotation marks omitted).

"Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. The Supreme Court "do[es] not consider this list to be exclusive." Id. It "mention[ed] these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force." Id.

ii. *Undisputed Facts*

As discussed above, Plaintiff failed to reproduce Defendants' itemized statement of facts and did not otherwise dispute any of the facts by citing to evidence in the record. As Plaintiff did not properly dispute Defendants' properly supported facts, the Court may take Defendants' properly supported facts as true.

Moreover, even considering Plaintiff's improperly submitted evidence, and as discussed in more detail below, Plaintiff did not meaningfully dispute Defendants' version of events.

10

Even according to Plaintiff, force was used only after Plaintiff refused to follow an order and cursed at Defendants, and the strike(s) occurred after Plaintiff failed to submit to restraints. Plaintiff does not allege that force was used after he was restrained.

Accordingly, the Court finds that the following facts are undisputed. [6]

At approximately 6:25 a.m. on November 11, 2016, Plaintiff walked into a shower stall. Declaration of Defendant Esquivel, ¶ 8. "Using an intercom connected to the inmate housing area, [defendant Esquivel] immediately informed Plaintiff that he could not use the shower and instructed him he needed to return to rack (bunk). At that time, floor officers were completing the morning inmate count and all inmates are to be at their bunks." Id. at ¶ 9. "Plaintiff did not follow [defendant Esquivel's] instruction issued by intercom, but instead became visibly upset and shouted at [defendant Esquivel], 'why can't I use the shower, I got to get ready to go to court!' [Defendant Esquivel] advised Plaintiff at that time that Page 11 of the Inmate orientation Handbook subsection (Court) states 'If you are scheduled for a morning court appearance, you should ready yourself during the morning meal.'" Id. at ¶ 13.

"After denying Plaintiff access to the shower and terminating the water supply to keep him from using the shower during this prohibited time, [defendant Esquivel] then advised Plaintiff that he would be disciplined for his actions by not returning to his bunk. Rather than comply by returning to his bunk, Plaintiff shouted at [defendant Esquivel], 'fuck you, do whatever you want, I don't give a fuck!' 'I want to speak to a sergeant or Lieutenant!'" Id. at ¶ 15.

"At this time, [defendant Esquivel] called down from the security tower and informed Lead Officer and Defendant, Joe Rodriguez, stationed directly below [him] at the base of the tower (sally-port area), that an inmate in Dorm 'D' was being verbally argumentative, cursing and disrespectful towards [defendant Esquivel] due to the Inmate demanding to take a shower during morning count, and that he was creating a disturbance, and asked him for assistance."

---

[6] To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible. Generally, it is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment.

Id. at 16. Immediately, defendants Rodriguez, Sanchez, and Pree entered dorm "D." Id. at ¶ 17. "Plaintiff immediately began yelling and cursing at the approaching Officers, stating that he had the 'right to take a shower' because he was going to be attending court." Id. at ¶ 18.

"As [defendant Rodriguez] approached Plaintiff, he began walking away from [defendant Rodriguez], stopping a few times to turn toward [the officers] to yell profanities and make other complaints about [the officers] not following jail rules. During this time, Plaintiff was moving, or talking with, his hands and arms." Declaration of Defendant Rodriguez, ¶ 13.

"[Defendant Rodriguez] verbally instructed [Plaintiff] to stop walking away and place his hands behind his back and informed him that [the officers] were going to escort him out of the Dorm." Id. at ¶ 17. Plaintiff "continued to ignore [defendant Rodriguez's] instructions, and would not stop yelling loudly at [the officers] and cursing. [Defendant Rodriguez] saw that his fists were cl[e]nched tightly, and he appeared ready to strike one of [the officers]." Id. at ¶ 18.

"[Defendant Rodriguez] grabbed Plaintiff's left arm using both of [defendant Rodriguez's] hands to place him in a rear wrist lock and to prevent him striking out and to attempt to position him to place hand cuffs on him. At this same time, however, Plaintiff began to turn his body…." Id. at ¶ 21. This caused defendant Pree "to grab Plaintiff's other arm and upper body with both hands and pull Plaintiff in close to [defendant Pree]." Declaration of Defendant Pree, ¶ 11.

"Both Officer Pree and [defendant Rodriguez] then used [their] body weight to force Plaintiff essentially straight down to the ground. While on the ground, Plaintiff continued to move, as [they] were attempting to place hand restraints on his wrists. Plaintiff continued yelling loudly and began thrashing about on the floor. At this time, [defendant Rodriguez] was still trying to secure Plaintiff's arms and was somewhat straddling Plaintiff hips off to one side, but [they] were still unable to gain control of both of Plaintiff's hands in order to place restraints on them. At this time, [defendant Rodriguez] deployed a single strike with [defendant Rodriguez's] closed fist to the upper left side (rib area) of his torso as a distraction." Declaration of Defendant Rodriguez, ¶ 23. The strike was not "deployed as a full, all-out swing and punch, but rather a short controlled or precise strike to get [Plaintiff's] attention long

enough to secure him." Id. "At that same time, [defendant] Sanchez assisted by kneeling and restraining Plaintiff's feet and ankles with her hands, in order to help secure Plaintiff, stop his kicking, and prevent injury to him or [the officers]. These measures were successful in distracting Plaintiff long enough [to] expose his hands and for [defendant Rodriguez] to [] secure the cuff restraints on his wrists." Id. at ¶ 24.

"Once secured in restraints, Officer Pree and [defendant Rodriguez] immediately assisted Plaintiff to a standing position and proceeded to escort him out of the dorm and into a nearby gym area without further incident." Id. at ¶ 25.

### iii. *Analysis*

Based on the undisputed facts, a fair-minded jury could not reasonably find that the force used by Defendants was objectively unreasonable.

As to the first consideration identified by the Supreme Court, the relationship between the need for the use of force and the amount of force used, defendant Rodriguez "saw that [Plaintiff's] fists were cl[e]nched tightly, and he appeared ready to strike one of [the officers]." Declaration of Defendant Rodriguez, ¶ 18. Additionally, defendant Rodriguez, who had twenty-two years of experience as a correctional officer as of November 10, 2016, id. at ¶ 2, explains that "[a]s Plaintiff moved closer to the bunk area, [defendant Rodriguez] determined that [the officers] needed to secure Plaintiff and remove him from the inmate housing area immediately. One, [he] did not want Plaintiff to access a possible weapon from the bunks or get any closure [sic] to other inmates increasing the risk of harm to everyone, and two, because Plaintiff was creating a disturbance and a dangerous situation for [everyone], including other inmates and staff, waiting any longer posed an unreasonable risk. Officers must also be aware and careful of being lured into a situation by use of a distraction caused by one or more inmates, only to find themselves the target of planned attack." Id. at ¶ 14. Plaintiff did not submit any evidence to dispute Defendants' reasons for using force.[7]

---

[7] Plaintiff does allege that Defendants misjudged his body language (ECF No. 66, p. 5), but the question before the Court is not what Plaintiff intended with his body language. Instead, the Court must make its "determination from the perspective of a reasonable officer on the scene," Kingsley, 576 U.S. at 397, and there is

Thus, based on the undisputed facts, Plaintiff presented a danger and there was a need for force. See also Khademi v. Langes, 2021 WL 107159, at *4 (E.D. Cal. Jan. 12, 2021), report and recommendation adopted, 2021 WL 1088279 (E.D. Cal. Mar. 22, 2021) (holding, and collecting cases that held, that force may be used when an inmate refuses to comply with orders of staff members); Herrera v. Redding, 2019 WL 827622, at *7 (E.D. Cal. Feb. 21, 2019), report and recommendation adopted, 2019 WL 5978901 (E.D. Cal. Mar. 20, 2019), aff'd, 804 F. App'x 862 (9th Cir. 2020) ("A Plaintiff is not entitled to disregard orders without consequences.").

Moreover, based on the undisputed facts, the force used was minimal and proportionate to the need for the use of force. In response to Plaintiff repeatedly disobeying orders, causing a disturbance, and walking toward the bunks, defendants Rodriguez, Pree, and Sanchez grabbed Plaintiff, took him to the ground, "somewhat" straddled his hips, restrained his feet and ankles with hands, and utilized a single precise/controlled strike (not an all-out swing and punch) to his ribs. Even construing all facts in favor of Plaintiff, the force used was proportional to the need. And, there is no evidence that force was used after Plaintiff was placed in restraints.

Regarding the second consideration, the extent of Plaintiff's injury, there is no evidence that Plaintiff suffered a serious injury. The pictures attached to the incident report appear to show only redness. (ECF No. 59-4, pgs. 9-10). There are no scrapes or blood. Moreover, while Plaintiff provided two x-rays that were taken of his left shoulder, both indicate that Plaintiff did not suffer a fracture, and state "[t]his notification is to let you know that your Results were Negative/Within Normal Limits and no follow up is necessary." (ECF No. 66, p. 10).[8] Finally, defendant Rodriguez did a visual assessment of Plaintiff, and Plaintiff "had no visible injuries or cuts, bleeding etcetera, and was easily walking, and continuing to yell and curse at us about his shower." Declaration of Defendant Rodriguez, ¶ 28. Moreover, "Plaintiff

---

no evidence in Plaintiff's opposition that suggests that Defendants' interpretation of Plaintiff's body language was unreasonable.

[8] Plaintiff also attaches a Reasonable Accommodation Panel Response dated September 5, 2018. (ECF No. 66, p. 9). It is not clear why Plaintiff attached this record. While it refers to a "remote history of a left shoulder dislocation and a left clavicle fracture," nothing in the response indicates that it was the November 10, 2016 use of force incident that caused these injuries. (Id.).

did not immediately complain of any injury or pain." Id. at 29.

The Court next turns to the third consideration, the efforts made by Defendants to temper or to limit the amount of force used. Based on the undisputed facts, Defendants attempted to avoid the use of force by utilizing verbal orders. However, Plaintiff repeatedly refused to follow orders, and instead walked towards the bunk area. Moreover, as discussed above, the amount of force used was minimal. Thus, Defendants attempted to avoid using force, and when using force, limited the amount of force used.

As to the fourth consideration, the severity of the security problem at issue, based on the undisputed facts, Plaintiff's behavior was causing a serious security problem. The unit where Plaintiff was housed "is an open floor Dorm fashion, Medium security housing area, housing approximately 71 other inmates at that time…. The inmates are not confined to individual cells in this Dorm area, are unrestrained, and generally able to move about the unit…. There are only 5 floor Officer[s] and [a] security Officer for 432 inmates on the floor." Declaration of Defendant Rodriguez, ¶ 11. According to defendant Rodriguez, his "training and years of experience as a correctional officer inside of the various security levels at the Jail facility has taught [him] that engaging in or allowing an inmate to create and/or engage in any sort of disturbance, be it verbal or physical, with anyone, and apart from being a violation of Jail rules, creates an extremely dangerous situation. This fact is amplified in open housing areas such as the one [the officers] were in with Plaintiff, as other inmates can be easily incited and where officers are heavily out-numbered." Id. at ¶ 15. Additionally, defendant Pree, who had approximately twenty-four years of experience as a correctional officer as of November 10, 2016, "believed that if [the officers] did not take immediate action to gain control of the situation and secure Plaintiff that [they] risked losing control of Plaintiff, as well as the security and order of the housing area and other inmates." Declaration of Defendant Pree, ¶¶ 2 & 10. Plaintiff did not submit any evidence to dispute that his behavior was a threat to the security of the institution.

Regarding the fifth consideration, the threat reasonably perceived by Defendants, as discussed above, based on the undisputed facts, Plaintiff presented a danger and there was a

15

need for the use of force.

Finally, the Court turns to the sixth consideration, whether Plaintiff was actively resisting. It is undisputed that Plaintiff was taken to the ground only after he refused to obey multiple orders and cursed at officers. It is also undisputed that after being taken to the ground Plaintiff did not submit to restraints. (ECF No. 66, p. 5). Instead, he kept moving around. (Id.).[9] According to Defendants, Plaintiff's behavior constituted active resistance. (ECF No. 59-3, pgs. 19-20; ECF No. 59-3, p. 43). And, Plaintiff has not submitted any evidence suggesting that a reasonable officer would not have perceived his behavior as constituting active resistance. Thus, based on the undisputed facts, Plaintiff was actively resisting. Additionally, even if Plaintiff's behavior did not rise to the level of active resistance, given the considerations discussed above, it would not change the analysis.

Overall, Defendants attempted to resolve a dangerous situation without using force by utilizing verbal orders. When that failed, Defendants used only a minimal amount of force to deal with the dangerous situation,[10] the use of force stopped when Plaintiff was finally restrained, and Plaintiff did not suffer a serious injury. Thus, based on the undisputed facts in this case, a fair-minded jury could not reasonably find that the force used by Defendants was objectively unreasonable.

The Court now addresses additional arguments raised by Plaintiff.

First, Plaintiff alleges that Defendants were wrong, and that, according to the Fresno County Jail Inmate Rule Book, he was allowed to shower at the relevant time. Even if this were true (Plaintiff did not attach excerpts of the relevant rules), the Inmate Orientation Handbook states that "any order given to an inmate by jail or court staff members[] **MUST BE**

---

[9] Plaintiff does allege that after he was taken to the ground he was moving because he was trying to get off his injured shoulder. (Id.). However, even if Plaintiff was not attempting to resist at that point, Plaintiff's subjective intent does not control. The Court makes the reasonableness "determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Kingsley, 576 U.S. at 397.

[10] Based on the undisputed facts, defendant Esquivel did not use any force on Plaintiff. However, the Court need not decide the issue of whether he was nevertheless an integral participant in the use of force because, even if he was, as discussed in these findings and recommendations, a fair-minded jury could not reasonably find that the force used by Defendants was objectively unreasonable.

**OBEYED**."  (ECF No. 59-4, p. 18) (emphasis in original).  It also states that inmates are prohibited from refusing to obey "any order issued by any employee of the Sheriff's Office." (Id. at 19).  Moreover, even if Defendants were wrong about the shower policy at the Jail, Plaintiff was not entitled to disregard their orders.  See, e.g., Herrera, 2019 WL 827622, at *7 ("A Plaintiff is not entitled to disregard orders without consequences.").

Second, Plaintiff argues Defendants are not entitled to summary judgment because they violated his due process rights by failing to interview inmate witnesses and because the surveillance camera was not functioning.  However, Plaintiff has not submitted any evidence that Defendants were responsible for the camera not functioning on the day in question or that they were supposed to interview inmate witnesses.  This mere allegation does not rise to the level of requiring a negative inference as to what that evidence would have shown.  See Fed. R. Civ. P. 37(e) ("If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.").  Additionally, this case is not proceeding on a due process claim and this does not constitute proof of excessive force.  Finally, Plaintiff has not cited to any law, and the Court is not aware of any, stating that it is a due process violation to fail to keep a camera in working order or to fail to interview witnesses to an excessive force incident.

Third, Plaintiff alleges that he complied with all orders.  However, the very next sentences of Plaintiff's opposition contradict this assertion.  Plaintiff states that he asked if he could finish showering, but was told no.  (ECF No. 66, p. 5).  He was then told to get dressed. (Id.).  Instead of complying, Plaintiff asked for a "higher authority," and then "replied to the officers … with a F--- Y--."  (Id.) (alterations in original).  Thus, Plaintiff clearly did not

comply with all orders.

Finally, Plaintiff alleges that he "was struck continuously by the officer as the officer's [sic] admitted from the statement." (EF No. 66, p. 5). "The Defendants [sic] statements was [sic] that the numerous punch[es] was [sic] to control [Plaintiff], when [he] was flopping around in pain, yelling." (Id. at 6). However, these allegations are insufficient to create a genuine dispute of material fact. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997). Plaintiff does not cite to or provide copies of the statements allegedly made by Defendants, does not allege who made the statements, does not allege when the statements were made, does not allege who struck him numerous times, does not allege approximately how many times he was struck, and does not allege what injuries, if any, were caused by the additional strikes. To the extent Plaintiff is referring to the declarations Defendants submitted in support of their motion for summary judgment, Plaintiff's allegation is incorrect. See Declaration of Defendant Rodriguez, ¶ 23 ("I deployed a single strike with my closed fist to the upper left side (rib area) of his torso as a distraction"); Declaration of Defendant Pree, ¶ ("I saw Officer Rodriguez deploy a single strike with his closed fist to Plaintiff's side rib area as a distraction"); Declaration of Defendant Sanchez, ¶ 8 ("As I was mostly looking down at Plaintiff's feet I do not recall seeing Officer Rodriguez issue the distraction strike to Plaintiff's side described in his Declaration and incident report"); and Declaration of Defendant Esquivel, ¶ 22 ("I did not have a clear view of the exact events that took place while they were on the ground, only that Plaintiff appeared to be flailing his legs and turning his body back and forth, and the Officers attempting to gain control of his hands and wrists in order to place restraints on Plaintiff").

Additionally, even if defendant Ramirez struck Plaintiff repeatedly instead of just once, it would not materially alter the analysis. While Plaintiff appears to allege it was because he was in pain, Plaintiff admits that after being taken to the ground he did not submit to restraints. (ECF No. 66, p. 5). Instead, he kept moving around. (Id.). Plaintiff does not submit any

evidence that the strikes continued after he was restrained, nor does he provide any evidence contradicting defendant Rodriguez's assertion that his strike was "a short controlled or precise strike to get [Plaintiff's] attention long enough to secure him," not a "full, all-out swing and punch." Declaration of Defendant Rodriguez, ¶ 23.

Accordingly, based on the foregoing, the Court will recommend that Defendants be granted summary judgment on Plaintiff's Fourteenth Amendment excessive force claim.[11]

### d. Plaintiff's Fourteenth Amendment Claim for Failure to Provide Medical Care

#### i. *Legal Standards*

"[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case. The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018) (alteration in original) (footnote, citations, and internal quotation marks omitted).

#### ii. *Analysis*

Plaintiff does not address Defendants' argument that they are entitled to summary judgment on his Fourteenth Amendment claim for failure to provide medical care, and there is

---

[11] Given this recommendation, the Court will not address Defendants' argument that they are also entitled to summary judgment on the issue of qualified immunity.

19

no evidence that any defendant put Plaintiff at substantial risk of suffering serious harm by failing to summon medical care after the use of force incident.

In fact, it is undisputed that after the use of force incident defendant Pree and defendant Rodriguez "immediately assisted Plaintiff to a standing position and proceeded to escort him out of the dorm and into a nearby gym area." Declaration of Defendant Rodriguez, ¶ 25. After defendant Rodriguez placed Plaintiff in the gym, he "proceed[ed] directly to locate the Corizon Nurse and mental health services and advise[d] of the incident and Plaintiff's condition and whereabouts, so they could evaluate Plaintiff." Id. at ¶ 32.

Additionally, as discussed above, there is no evidence that Plaintiff suffered a serious injury. Finally, there is no evidence that failing to summon medical care after the use of force incident caused Plaintiff injury.

As there is no evidence from which a fair-minded jury could reasonably find that any defendant recklessly disregarded a substantial risk faced by Plaintiff, the Court will recommend that Defendants be granted summary judgment on Plaintiff's Fourteenth Amendment claim for failure to provide medical care. [12]

e. Defendants' Request for Judicial Notice

Included in Defendants' motion for summary judgment is a request for judicial notice. (ECF No. 59-10). Defendants ask the Court to take judicial notice of portions of a petition for a writ of habeas corpus that Plaintiff filed in the Fresno County Superior Court on February 26, 2020, and a minute order issued by the Fresno County Superior Court on May 16, 2016.

As the Court is recommending that Defendants be granted summary judgment in full without considering the materials in the request for judicial notice, the Court will recommend that the request for judicial notice be denied as moot.

VI. RECOMMENDATIONS

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Defendants' motion for summary judgment (ECF No. 59) be granted;

_____

[12] Given this recommendation, the Court will not address Defendants' argument that they are also entitled to summary judgment on the issue of qualified immunity.

2. Judgment be entered in favor of Defendants;

3. Defendants' request for judicial notice be denied as moot; and

4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**June 2, 2021**__          _____/s/ Erica P. Grosjean_____
                                    UNITED STATES MAGISTRATE JUDGE